# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3475

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Julianne K. Sample, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: February 15, 2000
Filed:  May 31, 2000

_____

Before WOLLMAN, Chief Judge, HANSEN, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

HANSEN, Circuit Judge.

Following her plea of guilty to one count of credit card fraud, the district court[1] sentenced Julianne K. Sample to 30 months in prison.  Sample appeals her sentence. We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

# I.
## Facts and Background

From 1995 to 1997, Sample engaged in an elaborate financial fraud and identity theft scheme in the greater Kansas City, Missouri, metropolitan area. Sample perpetrated her scheme by procuring personal information about her roommates, casual acquaintances, visitors, and individuals whom she met through other friends. Sample also worked in tandem with her boyfriend, Thomas Melton. Melton, a former employee of Builders Square in Kansas City, often forwarded personal information obtained from his customers to Sample. The information that Sample acquired, either on her own or in combination with Melton, included social security numbers, dates of birth, addresses, and physical descriptions. Once Sample purloined this information from her unsuspecting victims, she began the process of stealing their identities. Sample used the personal information to open various bank accounts, secure credit cards, and even establish false driver's licenses in the names of her victims. Sample then utilized the credit cards to make multiple purchases in her victims' names. She also wrote checks and withdrew money from her fraudulent bank accounts. In one instance, Sample, posing as Missouri resident Keri Shirk, visited a regional health center in Independence, Missouri. While at the health center, Sample altered Shirk's medical records and obtained a prescription in Shirk's name.

Law enforcement officers eventually discovered Sample's scheme and apprehended her. Sample pleaded guilty in a Kansas state court to one count of forgery and two counts of felony theft. A Kansas state court judge sentenced Sample to serve 18 months in prison. While incarcerated in Kansas, Sample admitted to an agent of the United States Secret Service that she orchestrated an extensive identity takeover scheme and stole thousands of dollars from various unsuspecting victims in western Missouri and Kansas. Sample "guesstimated" that she either caused or intended to cause her victims to lose a combined amount in excess of $70,000.

Following her interview with the Secret Service, a federal grand jury indicted Sample in the Western District of Missouri for one count of credit card fraud. <u>See</u> 18 U.S.C. § 1029(a)(2). Sample entered into a plea agreement with the government. Pursuant to the agreement, Sample pledged to plead guilty to the charge contained in the indictment. The government agreed that the total amount of actual and intended loss to Sample's victims fell between $40,000 and $70,000. The parties acknowledged in the agreement, however, that the district court retained discretion with regard to all sentencing decisions.

Prior to Sample's sentencing hearing, the United States Probation Office prepared a presentence investigation report (PSIR). The PSIR concluded that contrary to Sample's plea agreement with the government, the total amount of actual and intended loss in this case was greater than $70,000 but less than $120,000. The PSIR also stated that an upward departure from the sentencing range prescribed in the United States Sentencing Guidelines might be warranted in this case based upon the factors delineated in United States Sentencing Guidelines Manual § 2F1.1 (Application Notes 11 and 12.) The PSIR, however, did not affirmatively recommend an upward departure. (<u>See</u> PSIR at 24.) Sample objected to the inclusion of the upward departure information. She stated that no grounds existed to support such a departure. The probation officer declined to retract the information.

The district court sentenced Sample on September 10, 1999. During Sample's sentencing hearing, the district court held that an upward departure was warranted in this case. The district court based its departure decision on the degree of psychological harm that Sample inflicted upon her victims. The district court also rejected the amount of loss stated in the plea agreement and adopted an amount consistent with Sample's statement to the Secret Service. The district court then sentenced Sample to 30 months in prison. Sample appeals her sentence to this court.

## II.

### Discussion

## A. Upward Departure:  Adequacy of Notice

Sample challenges the district court's decision to impose an upward departure in this case.  Sample contends that the district court failed to afford her proper notice that it was considering a departure from the applicable sentencing range.  Sample failed to raise her lack of notice argument during the sentencing hearing.  Hence, we must review the adequacy of notice issue for plain error.  See United States v. McCarthy, 97 F.3d 1562, 1580 (8th Cir. 1996), cert. denied, 519 U.S. 1139 and 520 U.S. 1133 (1997).

Rule 32 of the Federal Rules of Criminal Procedure requires a district court to provide a defendant notice if it intends to depart upward from a defendant's prescribed sentencing range.  See Burns v. United States, 501 U.S. 129, 138-39 (1991).  Inclusion in a PSIR of the specific grounds that may form the basis for an upward departure satisfies Rule 32's notice requirement.  See id.  In this case, the PSIR indicated that a departure may be warranted pursuant to USSG § 2F1.1.  Sample contends that the PSIR failed to state the specific departure grounds later relied upon by the district court.

Sample argues that the district court departed on the basis of extreme psychological injury as stated in USSG § 5K2.3.  Section 5K2.3 authorizes an upward departure "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense."  USSG § 5K2.3.  Sample contends that the district court based its departure decision on the factors delineated in § 5K2.3 rather than the factors listed in § 2F1.1.  Hence, argues Sample, she received insufficient notice of the departure.  We disagree.

Application Notes 11 and 12 to USSG § 2F1.1 both authorize a district court to depart upward if the court finds that the loss does not reflect the seriousness of the defendant's conduct.  Note 11(c) specifically permits a departure if "the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma."  At Sample's sentencing hearing, the district court stated that it was "departing upward in this matter because of the extreme complications and emotional distress that you have placed on your victims . . . [W]hile you may not have understood all of the details of how you were going to affect their lives, I think you had a substantial understanding of the confusion that you would create."  (Sent. Tr. at 61.)

After reviewing the record, we conclude that the district court based its departure decision on the factors outlined in Application Notes 11 and 12 to USSG § 2F1.1.  The district court identified emotional harm as the reason for the departure and stated that such harm was reasonably foreseeable.  Such a departure basis is  consonant with the factors outlined in Application Note 11.  The PSIR plainly stated that the Application Note 11 factors may serve as a possible basis for a departure, and the probation officer provided a copy of the PSIR to Sample.  As the district court's departure decision directly correlates with the PSIR's plain language, we must reject Sample's lack of notice argument.

**B. Upward Departure:  Sufficiency of the Basis/Reasonableness of the Extent**

Sample next argues that the district court erred when it decided to upwardly depart in this case.  Sample challenges the district court's decision to impose an upward departure as well as the reasonableness of the extent of the departure.  We review a district court's departure decisions under a unitary abuse of discretion standard.  See United States v. Goings, 200 F.3d 539, 542 (8th Cir. 2000).  We note that departure is appropriate only in extraordinary cases where there exists an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  18 U.S.C.

§ 3553(b); see also United States v. Sharma, 85 F.3d 363, 364 (8th Cir. 1996). We first determine whether the district court is basing its departure decision on a factor that is specifically encouraged, discouraged, or forbidden by the Sentencing Guidelines. See United States v. O'Hagan, 139 F.3d 641, 657 (8th Cir. 1998). If the factor is encouraged as a basis for departure by the Sentencing Commission, the district court may depart, provided that the applicable Guideline does not already take the factor into account. See Koon v. United States, 518 U.S. 81, 96 (1996); United States v. Washington, 109 F.3d 459, 462 (8th Cir. 1997). In conducting our review, we "defer to the [district] court on the critical issue of whether a given factor is present to a degree not adequately considered by the [United States Sentencing] Commission." United States v. Coon, 187 F.3d 888, 899-900 (8th Cir. 1999)(internal citations and quotations omitted), cert. denied, 120 S. Ct. 1417 (2000).

Section 2F1.1(b)(1) of the Sentencing Guidelines specifically encourages an upward departure whenever the amount of loss fails to capture the harmfulness and seriousness of the conduct. See USSG § 2F1.1, comment (n.11(c), 12). The amount of loss fails to capture the harmfulness and seriousness of the defendant's conduct when the conduct causes reasonably foreseeable physical or psychological harm, or severe emotional distress, to the victim of the crime. See Coon, 187 F.3d at 900; USSG § 2F1.1, comment (n.11(c)). The basis for the district court's departure, therefore, is an encouraged factor not taken into account by an applicable Guideline. Accordingly, we will uphold the district court's departure decision, as long as the factual record contains sufficient evidence to support the basis of the departure decision.

In this case, the record is replete with evidence that Sample caused her victims to suffer severe emotional trauma. Two of Sample's victims, Shirk and Paula Jensen, testified at Sample's sentencing hearing regarding the degree of disruption and turmoil wrought upon their lives as a result of Sample's deceptions. Jensen testified as follows:

Once I learned of this crime committed against me, I was terrified to be alone, fearful that someone may steal my children, frightened that someone may be following me, afraid to write a check, horrified that someone was out there destroying my good name and credit, and there wasn't anything I could do about it . . . Try to imagine the time and frustration and the endless hours spent on the phone and going in person to places in an effort to prove my real identity. All the time I was being treated like a criminal. No one believed me . . .

I cannot even begin to explain the embarrassment and the humiliation that I feel when I'm rejected (sic) credit or when stores refuse to accept my checks because of the criminal actions of Ms. Sample. Try to imagine how demoralizing it is to be treated like a criminal for a crime committed against you. Emotionally, it's very degrading.

Probably the most serious and traumatic situation involved me almost being arrested after a minor traffic accident because warrants listed under my [s]ocial [s]ecurity number came up because I'm an alias of her. I now have to carry this legal statement with me at all times to prove my real identity . . .

The anger, fear, and anxiety that this has caused is going to leave me scarred forever. It will never be over for me. I have a difficult time trusting people because now, of course, I'm suspicious of what someone is going to do to me. The time I've had to spend towards getting this mess straightened out has taken me away from my children. I'll never be able to get that back.

I've had two missed days off (sic) work trying to get different problems straightened out, and the frustration of the many phone calls that I've had to deal with while I've been at work that relate to this case has been overwhelming and distracting. I'm an elementary school teacher, and it has been extremely difficult for me to deal with these phone calls and then immediately step back into my classroom emotionally ready to meet the educational needs of my students.

(Sent. Tr. at 33-35.) Shirk offered similar testimony.

Based upon our review of the record, we conclude that more than enough evidence exists for the district court to find that Sample caused her victims to suffer severe emotional distress and trauma.  While Sample may not have been able to apprehend the precise effects of the harm caused by her actions, she undoubtedly could foresee the level of personal upheaval likely to result from an identity theft scheme.  Consequently, we hold that the district court committed no error when it decided to depart upwardly in this case.

Sample argues that even if the district court had the discretion to issue an upward departure, it erred when it sentenced Sample to 30 months in prison.  Absent the departure, Sample's sentencing range would have been 15 to 21 months in prison.  Sample contends that an upward departure from a 15- to 21-month sentencing range to 30 months is unreasonable.  Sample's argument lacks merit.

We review for abuse of discretion the reasonableness of the extent of an upward departure.  See United States v. Johnson, 56 F.3d 947, 958 (8th Cir. 1995). In conducting our review, we are mindful that the "district court's decision on this matter is quintessentially a judgment call and we respect the district court's superior feel for the case." Id. (internal quotations and citations omitted).  The district court's judgment call is, of course, inexorably linked with the facts and circumstances of the particular crime at issue.

In the instant case, Sample's identity theft scheme exhibits a degree of callousness sufficient to justify a nine-month upward departure.  In fact, we believe that the district court's decision to issue an upward departure of nine months was more than reasonable under the circumstances of this case.  Sample's challenge to the reasonableness of the extent of the upward departure therefore fails.

## C. The Amount of Loss

Sample challenges the district court's determination of her base offense level under the Sentencing Guidelines. Sample argues that the district court erred when it rejected the amount of loss stipulation contained in her plea agreement with the government. The plea agreement provided that the total amount of actual and intended loss caused by Sample's identity theft scheme fell between $40,000 and $70,000. The district court found instead that the total amount of loss in this case was less than $120,000 but greater than the $70,000 maximum figure provided in the plea agreement. We review the district court's factual findings regarding the amount of loss for clear error. See United States v. Roggy, 76 F.3d 189, 192 (8th Cir.), cert. denied, 517 U.S. 1200 (1996). We review a district court's application of the guidelines to the facts de novo. See United States v. Molina, 172 F.3d 1048, 1058 (8th Cir.), cert. denied, 120 S. Ct. 221 (1999).

The government bears the burden of proving the amount of loss by a preponderance of the evidence. See United States v. Jackson, 155 F.3d 942, 948 (8th Cir.), cert. denied, 525 U.S. 1059 (1998). In this case, however, the government offered no testimonial evidence regarding either the actual or intended amount of loss. Sample testified that the total amount of both actual and intended loss fell between $40,000 and $70,000. She told the court that her earlier statements to the Secret Service agent were mere guesstimates. The district court rejected Sample's $40,000 to $70,000 calculation. Instead, the district court relied upon the amount of loss guesstimate conveyed by Sample to the Secret Service, which was enumerated within the PSIR.

In arriving at its finding regarding the amount of loss, the district court noted that Sample "was able to remember a number of details about the debriefing that she gave to the Secret Service agent . . . [a]nd [she] is sufficiently sophisticated in the criminal justice system to understand the consequences of talking to the police about any matter.

And I think, especially given the nature of these kinds of crimes, it is very difficult for law enforcement to exactly identify what has been lost, and the person who really is in the best position to do that is, in fact, the defendant." (Sent. Tr. at 60.) Hence, the district court found that the detailed statements that Sample gave to the Secret Service were more credible than the statement of loss that Sample provided during the sentencing hearing. The district court's decision, in essence, was based on witness credibility. Questions of witness credibility are committed squarely to the domain of the sentencing court and are virtually unreviewable on appeal. See United States v. Hernandez, 187 F.3d 806, 808-09 (8th Cir. 1999). Accordingly, we must conclude that the district court did not clearly err in its findings regarding the amount of loss. Consequently, Sample's challenge to the district court's determination of her base offense level fails.

### III.
### Conclusion

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-