**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

_____

**No. 01-1043**

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Appeal from the United |
|  | * | States District Court |
| Plaintiff - Appellee, | * | For the District of |
|  | * | Nebraska. |
| versus | * |  |
|  | * | [UNPUBLISHED] |
|  | * |  |
| FREDERICK H. LOWELL, | * |  |
|  | * |  |
| Defendant - Appellant. | * |  |
|  | * |  |

_____

Submitted: June 13, 2001
Filed: June 29, 2001

_____

Before WOLLMAN, Chief Judge, BOWMAN and HAMILTON,[1] Circuit Judges.

_____

PER CURIAM.

On December 15, 1999, Frederick Lowell (Lowell) was charged by a federal grand jury sitting in the District of Nebraska with conspiracy to distribute and to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  On May 8, 2000, pursuant to a plea agreement with the government, Lowell entered a plea of guilty.  On December 8, 2000, the district court sentenced Lowell to 135 months' imprisonment with five years of supervised release.  The judgment of the

_____

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

district court[2] was entered on December 12, 2000.  Lowell appeals, contending that the district court erred in calculating the amount of methamphetamine attributable to him for sentencing purposes.  We affirm.

I

According to Lowell's testimony at the plea hearing, during the course of the conspiracy,[3] Dan Jennings (Jennings) went to Lowell's house and left a package for Dena Edwards (Edwards) on a table in the house.  Lowell acknowledged at the plea hearing that he knew the package left by Jennings contained methamphetamine.  A short time after Jennings left the package, Edwards arrived at Lowell's house and opened the package in the presence of Lowell.[4]

Following Lowell's entry of his guilty plea, a presentence investigation report (PSR) was prepared by a United States Probation Officer.  The probation officer found that Lowell was responsible for the distribution of at least 1.5 but less than five kilograms of methamphetamine, resulting in a base offense level of thirty-four, United States Sentencing Commission Guidelines Manual (USSG) § 2D1.1(c)(3).  Because he found that Lowell possessed a dangerous weapon during the course of the conspiracy, the probation officer increased Lowell's offense level by two levels pursuant to USSG § 2D1.1(b)(1).  After reducing Lowell's offense level by three levels for acceptance of responsibility, id. §§ 3E1.1(a) and (b), the probation officer found Lowell's total offense level to be thirty-three.  The probation officer found Lowell's criminal

---

[2]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

[3]The indictment alleged that Lowell conspired with "other persons, some known and some unknown" beginning "at least as early as June 15, 1997, and continuing until at least on or about September 30, 1999."

[4]At the plea hearing, Lowell acknowledged that on occasion he was Jennings' bodyguard when Jennings went to collect the proceeds of a methamphetamine transaction.

- 2 -

history category to be three, resulting in a guideline range of 168 to 210 months' imprisonment.

Lowell objected to the PSR on three grounds.  First, he objected to the probation officer's finding that he was responsible for the distribution of at least 1.5 but less than five kilograms of methamphetamine.  Next, he objected to the probation officer's finding that he possessed a dangerous weapon during the course of the conspiracy.  Finally, Lowell objected to the probation officer's criminal history calculation, contending that the probation officer erred when he included two prior sentences Lowell received in Nebraska state court.[5]

At the beginning of the sentencing hearing on December 8, 2000, the district court sustained Lowell's objection to the weapon enhancement.  The district court then sustained Lowell's objection to the probation officer's decision to include, in his criminal history calculation, the April 1999 sentence in York County Court for possession of a controlled substance.[6]  Thereafter, three witnesses testified on behalf of the government, each pursuant to a plea agreement requiring cooperation with the government.

---

[5]The first prior sentence challenged by Lowell was a six-month sentence he received in April 1999 in York County Court for possession of a controlled substance.  The probation officer assessed two criminal history points for this sentence pursuant to USSG § 4A1.1(b) ("Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a).").  The second sentence challenged by Lowell was a nine-month sentence he received in March 1999 in Lancaster County Court for possession of a controlled substance.  The probation officer assessed no criminal history points for this sentence pursuant to USSG § 4A1.2(a)(1) because the sentence imposed for this offense was for conduct part of the charged conspiracy in this case.

[6]The district court's decision to exclude, in its criminal history calculation, the April 1999 sentence in York County Court for possession of a controlled substance did not result in a change in Lowell's criminal history category, as the exclusion of this sentence did not result in a sufficient reduction in Lowell's criminal history points to lower his criminal history category from three to two.

The first of the government's witnesses was Jennings. Jennings testified that he supplied Lowell with methamphetamine on a weekly and sometimes bi-weekly basis for a little over a year beginning in the summer of 1997. When asked how much methamphetamine he supplied Lowell from June 1997 through August 1998, Jennings indicated that he supplied Lowell with five pounds of methamphetamine.

The government's next witness was Michael Parrow (Parrow). Parrow testified that he purchased methamphetamine from and sold methamphetamine to Lowell during the course of the conspiracy. Parrow testified that during the course of the conspiracy he purchased from and/or sold to Lowell between two and one-half and three ounces of methamphetamine.

The government's final witness was Shawn Post (Post). Post testified that he sold Lowell two ounces of methamphetamine in the fall of 1998. Post also testified that, during the course of the conspiracy, he supplied Jennings with quarter-pound quantities of methamphetamine "almost every week for about four months."

At sentencing, the government also introduced the deposition of Edwards. In her deposition, Edwards testified that she purchased at least three grams of methamphetamine from Lowell on three occasions during the course of the conspiracy. Edwards also testified that she saw Lowell with a baseball-size quantity of methamphetamine. According to the government's witnesses, a baseball-size quantity of methamphetamine was at least two ounces.

The district court credited the testimony of the government's witnesses and found that Lowell was responsible for 2,066 grams of methamphetamine. According to the district court, Lowell was responsible for 2,010 grams of methamphetamine from his dealings with Jennings and another fifty-six grams from his dealings with Post. In the district court's view, its drug quantity calculation was "fairly conservative."

The district court's finding of drug quantity resulted in a base offense level of thirty-four for Lowell, USSG § 2D1.1(c)(3).

- 4 -

With a reduction of the three levels for acceptance of responsibility, id. §§ 3E1.1(a) and (b), Lowell's total offense level was thirty-one. Coupled with a criminal history category of three, Lowell's guideline range was 135 to 168 months' imprisonment. The district court sentenced Lowell to 135 months' imprisonment with five years of supervised release.

II

On appeal, Lowell argues that the district court erred in calculating the amount of methamphetamine attributable to him for sentencing purposes. The gist of Lowell's argument is that the district court erred in crediting the testimony of the government's witnesses because the testimony of these witnesses was uncorroborated and inherently unreliable.

We review the district court's drug quantity determination under the clearly erroneous standard. United States v. Granados, 202 F.3d 1025, 1028 (8th Cir. 2000). Under this standard, "we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." Id. (citation and internal quotation marks omitted). The district court's credibility determinations concerning drug quantity are "'virtually unreviewable on appeal.'" United States v. Gonzalez-Rodriguez, 239 F.3d 948, 954 (8th Cir. 2001) (quoting United States v. Sample, 213 F.3d 1029, 1034 (8th Cir. 2000)).

The base offense level for a drug offense is determined by calculating the amount of drugs attributable to the defendant. United States v. Atkins, 250 F.3d 1203, 1211 (8th Cir. 2001). In drug conspiracy cases such as this one, the amount of drugs attributable to the defendant is calculated in the following manner:

> "A defendant convicted of conspiracy is properly held accountable for all reasonably foreseeable acts and omissions of any co-conspirator taken in furtherance of the conspiracy. Thus, in a drug conspiracy, the district court may consider amounts from drug transactions in which the defendant was not directly involved, provided

that those other dealings were part of the same course of conduct or scheme.  Before a quantity of drugs may be attributed to a particular defendant, the sentencing court is required to find by a preponderance of the evidence that the transaction or activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him."

Id. at 1211-12 (quoting United States v. Brown, 148 F.3d 1003, 1008 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999)).  In cases "where there is no seizure or where the amount seized does not reflect the scale of the offense," the district court may "approximate the quantity of drugs."  Atkins, 250 F.3d at 1212.  In making its drug quantity determination, the district court can consider "any evidence . . . as long as it has 'sufficient indicia of reliability to support its probable accuracy.'"  United States v. Behler, 14 F.3d 1264, 1273 (8th Cir. 1994) (quoting USSG § 6A1.3).  At sentencing, the government is saddled with the burden of proving by a preponderance of the evidence the amount of drugs attributable to the defendant.  Atkins, 250 F.3d at 1211.

We conclude that the district court did not err in calculating the amount of methamphetamine attributable to Lowell for sentencing purposes.  At sentencing, the district court carefully assessed the credibility of the government's witnesses.  In crediting the testimony of these witnesses, the district court noted that before crediting such testimony "one must be very skeptical."  The district court's comments concerning Jennings' testimony offers further proof of the district court's careful assessment of the credibility of the government's witnesses:

[Jennings] has something to lose if he lies or if the Government finds out about it.  Then he loses his plea agreement, presumably can be prosecuted, but I think your point is well taken.  You have to be very careful about listening to these snitches because so much of what they testify about is difficult to corroborate.  They can pick numbers out of the air.

The district court's wise reluctance to put too much stock in the testimony of the government's witnesses (all coconspirators) and

the absence of evidence concerning a seizure of any methamphetamine understandably led the district court to make a "fairly conservative" approximation of the amount of methamphetamine attributable to Lowell. Indeed, in making its drug quantity determination, the district court did not consider any methamphetamine transactions in which Lowell was not directly involved; rather, the district court's drug quantity determination focused exclusively on methamphetamine transactions in which Lowell received methamphetamine directly. Thus, there is no doubt that Lowell's dealings with Jennings and Post were "'in furtherance of the conspiracy and . . . known to'" Lowell. Id. at 1212 (quoting Brown, 148 F.3d at 1008). Moreover, the testimony of each of the government's witnesses was sufficiently detailed and was consistent with the other testimony presented. In short, we cannot conclude that the district court erred in crediting the testimony of the government's witnesses because the testimony had "'sufficient indicia of reliability to support its probable accuracy.'" Behler, 14 F.3d at 1273 (quoting USSG § 6A1.3). Accordingly, we cannot take issue with the district court's finding that Lowell was accountable for 2,066 grams of methamphetamine.

III

For the reasons stated herein, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

- 7 -