# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1398

_____

United States of America

*Plaintiff - Appellee*

v.

Erick McKay

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 9, 2014
Filed: January 5, 2015

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

After Erick McKay pleaded guilty to two counts of abusive sexual contact with a child under twelve, in violation of 18 U.S.C. § 2244(a)(1) and (5), the district court[1] imposed a sentence of 360 months' imprisonment—an upward departure from the

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

parties' joint recommendation of a 240-month sentence. McKay appeals, arguing that his sentence is substantively unreasonable. We affirm.

McKay was originally indicted with one count of aggravated sexual abuse of a child by force, 18 U.S.C. § 2241(a), and one count of aggravated sexual abuse of a child under twelve years of age, id. § 2241(c). The charges involved the granddaughter of the woman with whom McKay was living on the Spirit Lake Indian Reservation. McKay eventually entered into a plea agreement, he pleaded guilty to two counts of abusive sexual contact, and the original indictment was dismissed. The plea agreement recited the factual basis for the guilty plea, namely, that McKay "knew the victim . . . had not attained 12 years of age" and that on two occasions between April 14, 2011, and June 11, 2012, "he did by threat and use of force, cause [the victim] to touch her hand to [his] penis . . . with the intention to arouse and gratify his sexual desire." McKay also acknowledged in the plea agreement that because of a 2002 state conviction for the murder of his seven-week-old son, "he is an offender against children who is required under state law to register his address and not have contact with children without authorization from his probation officer." The plea agreement included a joint sentencing recommendation of 240 months' imprisonment, which represented an upward departure from the anticipated advisory sentencing range calculated under the U.S. Sentencing Guidelines Manual (Guidelines). The plea agreement specifically informed McKay that the district court was not a party to the agreement, was not bound by the agreement, could depart from the advisory Guidelines range, and could impose other adjustments not described in the agreement.

At the change-of-plea hearing and in a written notice filed the same day, the district court informed the parties that it was considering an upward departure from the Guidelines range under § 5K2.0(a)(1)(B). The court reasoned that the upward departure was appropriate because McKay's case was "atypical" and his "history of offending against children," including the murder of his infant son, were aggravating

circumstances not adequately taken into consideration by the Guidelines. The district court also specifically advised the parties that it intended to consider all of the 18 U.S.C. § 3553(a) sentencing factors as required in calculating McKay's sentence. The court invited the parties to submit papers addressing the sentencing and departure issues, but neither party did so.

A Presentence Investigation Report (PSR) was prepared. McKay objected to several statements therein, and the PSR was revised in accordance with his objections. The revised PSR calculated an advisory Guidelines range of 100 to 125 months' imprisonment. The criminal history section described McKay's 2002 state conviction for the murder of his infant son, along with his history of repeated probation violations, his repeated failure to comply with state requirements that he register as an offender against children, and his refusal to refrain from contact with children absent prior consent from his probation officer.

With respect to the offense conduct, the revised PSR stated that the victim's grandmother found the victim in bed after school one day, "all covered up" and unresponsive; that the victim told her grandmother that McKay was inappropriately touching her; and that after this revelation, the victim's grandmother woke one night to find McKay on the couch in his underwear and the victim on the floor with a blanket "close to her like she was scared." Because the victim's grandmother was either away from home or asleep when these incidents occurred, the PSR advised that the victim had been in McKay's "custody, care[,] and supervisory control" at the relevant times. The PSR also recounted that the victim had disclosed to a forensic interviewer that McKay "allegedly vaginally and anally penetrated her on multiple occasions from age 6 to age 10," that he "allegedly digitally fondled her vagina [and] fondled her breast area," and that he "attempted to kiss her using his tongue." McKay allegedly threatened to hit and actually hit the victim with a belt to ensure her silence and offered her money for sexual acts. Although "McKay denied all allegations of vaginal and anal penetration," he did not deny the other allegations set forth in the

-3-

revised PSR, and he admitted to the "two occasions of having [the victim] touch his penis" that formed the factual basis for the plea agreement.

At the sentencing hearing, the district court adopted the facts and the 100- to 125-month advisory Guidelines range set forth in the PSR, and neither party objected. In accordance with the plea agreement, the government and McKay then jointly recommended that he be sentenced to a total term of imprisonment of 240 months—120 months' imprisonment on each of the two counts to which he pleaded guilty, with the terms to run consecutively. After hearing the parties out, the district court rejected the joint recommendation and instead sentenced McKay to consecutive terms of 180 months on each count, for a total term of imprisonment of 360 months, and a lifetime of supervised release.

On appeal, McKay concedes that the district court properly calculated the advisory Guidelines range and that an upward departure was warranted by the circumstances presented in this case—indeed, the parties contemplated such a departure in the plea agreement and jointly recommended it at the sentencing hearing. McKay's sole argument on appeal is that the district court failed to make specific findings that adequately justify its decision to depart further still and thus imposed a substantively unreasonable sentence.[2]

"[W]e review the ultimate sentence for reasonableness in accordance with the factors listed in 18 U.S.C. § 3553(a)." United States v. Mack, 452 F.3d 744, 746 (8th Cir. 2006). A sentencing court abuses its discretion if it "fails to consider a relevant

_____

[2]The government asserted in its brief that McKay's arguments amounted to unpreserved allegations of procedural sentencing error that are subject to plain-error review. Because McKay specifically disavows any claim of procedural error in the district court's sentencing decisions, we consider only whether, under the totality of the circumstances, the district court abused its discretion by imposing a substantively unreasonable sentence. Gall v. United States, 552 U.S. 38, 51 (2007).

factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Lozoya, 623 F.3d 624, 626 (8th Cir. 2010). We must give serious consideration to the extent of a deviation from the advisory Guidelines range, but the Supreme Court has explicitly instructed that "extraordinary circumstances" are no longer needed to "justify a sentence outside" of that range. Gall, 552 U.S. at 47. Instead, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the" deviation. Id. at 51. "[S]ubstantive appellate review in sentencing cases is narrow and deferential," United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc), and it "exists, in substantial part, to correct sentences that are based on [an] unreasonable weighing" of the § 3553(a) factors, United States v. Kane, 639 F.3d 1121, 1136 (8th Cir. 2011).

Under § 5K2.0(a)(1)(B), the provision cited by the district court in its notice of intent to depart, an upward departure may be appropriate in child-sexual-offense cases if the court finds that aggravating circumstances exist "of a kind, or to a degree, not adequately taken into consideration" by the Guidelines and that an upward departure is appropriate "to advance the objectives set forth in 18 U.S.C. § 3553(a)(2)." This Guidelines policy statement requires the court to consider whether a particular case "significantly differs from the norm," and it refers the court to sentencing factors that a court must always consider in fashioning an appropriate sentence. United States v. Never Misses A Shot, 715 F.3d 1048, 1052 (8th Cir. 2013). Under § 3553(a)(2), the court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of the defendant, and provides the defendant with necessary treatment and training.

At the sentencing hearing, the court first reminded the parties that it had filed a notice of intent to depart, in which the court cited the defendant's repeated failure

to comply with court orders and his history of offending against children, including the murder of his infant son. The court then turned to the § 3553(a) factors, first discussing the nature and circumstances of the offense and noting that there were "multiple continuing assaults against a minor child" "in the care, custody[,] and control of the defendant." The district court then considered McKay's history and characteristics, noting his "long history of offenses against children, including murder." The court summarized its findings regarding McKay's "dismal history" by noting the "continuing series of sexual assaults, failure to comply with the law to register as an offender against children, [and] continuous contact with women who have minor children."

With respect to its duty to impose a sentence that "reflects the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment," and affords "general deterrence" to criminal conduct, the court observed that the sentence the parties had contemplated would likely have been sufficient to accomplish these sentencing goals. As for protecting the public from further crimes by McKay, however, the court was "deeply concerned. The bottom line in this case is the defendant has just a horrendous record of offending against children. We have a murder and we have a continuing series of sexual assaults. . . . [I]t appears that any child in the proximity of this defendant is at risk and it seems that there is little, if anything, that the criminal justice system can do to avoid that risk from existing," given McKay's "failure to comply" with court orders, and his "ongoing offenses," including recent "sexual misconduct . . . within a jail facility."

The court then rejected the advisory Guidelines range as "flat out insane" given the circumstances of the case. The court acknowledged the parties' joint recommendation, noting that "it was bargained for," that McKay "gave up his right to a trial," and that "child witnesses . . . were protected from the necessity of testifying," but it concluded that, under the totality of the circumstances and in light of the § 3553(a) factors, it "just [could not] get to 240 months" because that sentence

was not "appropriate." The court then imposed a total sentence of 360 months—180 months on each count, to run consecutively.

McKay argues that the district court imposed an unreasonable sentence based on facts that he did not admit to and that the government did not prove. The district court found that McKay "offended against two minor children under the age of 12 for a period of years, not days, weeks, or months" and that McKay engaged in a "continuing series of sexual attacks." As noted above, McKay admitted in his plea agreement to two incidents of hand-to-penis contact that occurred between April 14, 2011, and June 11, 2012. But McKay did not object to the other incidents described in the PSR, including that he "digitally fondled [the victim's] vagina" and "breast area," that he "attempted to kiss her using his tongue," that he threatened and hit the victim with a belt to ensure her silence, and that he offered her money for sexual acts. Nor did he object to the PSR's statement that the abuse allegedly continued from the time the victim was six until she was ten. If a defendant does not object to the specific factual allegations set forth in the PSR, the district court may accept them as true for purposes of sentencing. See, e.g., Feemster, 572 F.3d at 458 n.3. Although some of the remarks the district court made during the sentencing hearing and in its Statement of Reasons might well have been a bit more tempered, the unobjected-to facts detailing McKay's conduct sufficiently support an upward departure, and thus we conclude that the court did not abuse its discretion in sentencing McKay as it did.

McKay contends that the district court's recitation in the Statement of Reasons that he had "offended against two minor children" establishes that the court was under a misapprehension about the number of victims involved. We disagree. During the sentencing hearing, the district court referred to only a single victim. The Statement of Reasons closely tracks the district court's oral pronouncements at the sentencing hearing, at which the court repeatedly referred to the single victim of McKay's crimes, while also recognizing that McKay's guilty plea spared the victim and another child witness from the ordeal of testifying. We conclude that the district

court's single reference in the Statement of Reasons to offenses against two minor victims does not establish that the district court fundamentally misunderstood the facts of McKay's case.

McKay also argues that the court abused its discretion because it should have imposed the sentence anticipated by the parties in the plea agreement, which already included a significant upward departure. It is the district court's responsibility, however, and not the parties' prerogative, to determine the appropriate sentence after taking into account the § 3553(a) factors and the circumstances of a particular case. See Lozoya, 623 F.3d at 627. We are satisfied that the district court's explanation constituted an adequate justification of its sentencing decision. See United States v. Sample, 213 F.3d 1029, 1034 (8th Cir. 2000) (noting that a district court's determination of the extent of an upward departure is "quintessentially a judgment call[,] and we respect the district court's superior feel for the case").

Lengthy though McKay's sentence undoubtedly is, we have repeatedly stated that it will be "the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Kane, 639 F.3d at 1135 (quoting Feemster, 572 F.3d at 464). A "sentence need not be the most appropriate one, it need only be a reasonable one," and it will be set aside "only if we determine, after giving a full measure of deference to the [district court], that the sentence imposed truly is unreasonable." Id. (quoting United States v. Irey, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc)). This is not such a case. Given the district court's meaningful articulation of its consideration of the § 3553(a) factors, and its careful consideration of the reasons warranting a departure from the advisory Guidelines range, we conclude that the district court did not abuse its discretion in departing upward as it did.

The judgment is affirmed.

_____