**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Connell Steve HARDY, Defendant–Appellant.**

No. 96–1405.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1996.

Decided Dec. 4, 1996.

Barry Rand Elden, Chief of Appeals, James Conway (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff-Appellee.

Howard B. Levy (argued), Chicago, IL, for Defendant-Appellant.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Hiding a 7–inch knife, Connell Hardy walked into the Dirksen Federal Building in Chicago, Illinois, in the summer of 1994. He stepped through the metal detectors undetected and proceeded to the 19th floor, where some of the district judges have chambers. Hardy entered the office of Fran D'Andrea, Judge George Marovich's clerk, and then the office of Sharon Suich, Judge Marvin Aspen's secretary, whose office adjoined the chambers of both Judges Marovich and Aspen.[1] A disappointed litigant, Hardy had, according to his own words, decided to stab, but not to kill, both Judge Marovich and Ms. D'Andrea.

What brought him to this point? In 1993 Hardy had filed a civil complaint in federal court in Chicago against Northwestern Memorial Hospital. It was assigned to Judge Marovich. On March 19, 1993, Judge Marovich dismissed the complaint as "frivolous"— a legal term of art, which no doubt sometimes offends litigants, though fortunately hardly ever this much. Over three months later, apparently mulling over the dismissal, Hardy began to believe that "people were going to take retribution" against him for his role in the Northwestern lawsuit, as well as another suit he filed against the Trans–Union company. Judge Aspen had dismissed the latter case.

Hardy convinced himself that Judge Marovich was, in part, to blame for his problems with people who might take retribution against him, and he also believed that during the hearing at which the Northwestern case was dismissed, Ms. D'Andrea "smirked" when dismissal was ordered. Hardy decided to stab both of them, although he said he did not want to kill them.

So Hardy brought the knife—a kitchen knife with a black handle and a steel serrated blade measuring 7 inches in length—into the federal building, hiding it in the waistband of his pants. He first went to Ms. D'Andrea's office. When he realized that she did not recognize him, he decided it wouldn't do any good to stab her. Rather, he told her he needed to speak to the United States Attorney. He was told to use the public telephones.

Hardy left Ms. D'Andrea's office and made his way to a hallway, off which judges' chambers are found. He walked into Ms. Suich's

---

1. Judge Aspen became the chief judge of the United States District Court for the Northern District of Illinois on July 1, 1995.

office and asked her if he could use a telephone. Like Ms. D'Andrea, Ms. Suich directed Hardy to public telephones. Hardy said, "No, you don't understand, I need some help. I'm afraid I might hurt myself." He pulled back his jacket, revealing the knife. Ms. Suich pushed a distress alarm to summon the United States marshals. Then she wisely walked into Judge Aspen's chambers and shut the door. When the marshals arrived, they found Hardy sitting on a couch in Ms. Suich's office with a knife in his waistband. They arrested him.

Hardy was interviewed by Special Agent Daniel Kentala of the Federal Bureau of Investigation. He admitted carrying the knife into the federal building with the intention of stabbing Judge Marovich and Ms. D'Andrea. He admitted that only after Ms. D'Andrea failed to recognize him did he decide against his plan.

Hardy was tried and convicted on a charge of possessing a knife in the Dirksen Building with the intent that it be used to assault Judge Marovich in violation of 18 U.S.C. § 930(b). On February 16, 1996, he was sentenced to 24 months imprisonment to be followed by 3 years of supervised release. His appeal from his conviction and sentence is now before us.

Hardy raises two issues: whether the evidence was sufficient to sustain the conviction, and whether it is proper for a district court to consider a defendant's mental health in sentencing him.

We lack jurisdiction to consider the sentencing issue. Title 18, U.S.C. § 3742(a), defines the four circumstances which allow us to review sentencing determinations; they are, if the sentence:

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. None of these circumstances are present in this case.

None of these circumstances are present in this case.

Hardy does not contend that the guidelines were incorrectly applied. Furthermore, his sentence is within the guideline range. His contention is that the judge erred when he considered Hardy's mental health in determining that he should be sentenced at the high end of the guideline range. Judge Harold Baker of the Central District of Illinois, who was called in to try the case, said:

> The Court finds that the defendant needs counseling and therapy, notwithstanding his remarks that he does not. The reports in the case indicate that while he has no mental illness that prevents him from understanding what he's doing or the difference between right and wrong, he does have a number of personality disorders that he needs assistance with, and the maximum term plus the maximum term of supervised release is imposed by the Court to maintain supervision over the defendant to help him. . . .

Hardy claims that consideration of rehabilitation or of providing medical care is prohibited under 28 U.S.C. § 994(k), which provides:

> The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

Section 994 is directed to the Sentencing Commission. It sets out the duties of the Commission in its task of promulgating the guidelines. It does not provide limitations on sentencing judges. In fact, when sentencing a defendant within a guideline range, a district judge is instructed by 18 U.S.C. § 3553(a)(2)(D) "to provide the defendant

with needed ... medical care, or other correctional treatment in the most effective manner." See *United States v. Giddings*, 37 F.3d 1091 (5th Cir.1994), cert. denied, — U.S. —, 115 S.Ct. 1323, 131 L.Ed.2d 203.

Hardy's reliance on *United States v. Doering*, 909 F.2d 392 (9th Cir.1990), for the proposition that a judge may not consider a need for psychiatric treatment is misplaced. The issue in *Doering* was whether an upward departure from the guideline range was warranted and specifically whether the need for psychiatric help justified the departure. The court determined that it did not. To repeat ourselves, Hardy was sentenced within the guideline range; there was no error of law. Therefore, we lack jurisdiction to consider any challenge to his sentence.

 Hardy's contention that the evidence was insufficient to sustain the verdict also fails. In reviewing the sufficiency of the evidence to sustain a conviction, all evidence and the reasonable inferences drawn from that evidence must be viewed in the light most favorable to the government. *United States v. Griffin*, 84 F.3d 912 (7th Cir.1996). A jury verdict will not be overturned on appeal if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

A violation of 18 U.S.C. § 930(b), under which Hardy was convicted, requires the government to prove that a defendant knowingly possessed a dangerous weapon in a federal facility and that he did so with the intent to use the weapon in the commission of a crime. In Hardy's case, there is no dispute that he possessed a dangerous weapon in a federal facility. His claim is that the evidence does not support a finding of criminal intent. However, his own words are sufficient to establish intent. He told Special Agent Kentala he was afraid that people were going to seek retribution against him for his suit against Northwestern Hospital. He said he blamed Judge Marovich for his problems because the judge had dismissed his lawsuit. For that reason, he intended to stab Judge Marovich, but not to kill him. Similarly, because she allegedly smirked at him, he intended to stab Ms. D'Andrea. In order to carry out his plan, he smuggled the knife into the federal building. Then, of course, the evidence shows that he went to Ms. D'Andrea's office and Ms. Suich's office. This evidence was more than sufficient to sustain his conviction. The judgment of the district court is AFFIRMED.