**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0294n.06
Filed: May 27, 2008

**No. 06-6599**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Eastern District |
| | ) | of Tennessee |
| JONATHAN MATTHEW HALL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  BOGGS, Chief Judge; ROGERS, Circuit Judge; and SHADUR, Senior District Judge.[*]

SHADUR, Senior District Judge:  Jonathan Matthew Hall ("Hall") challenges his criminal sentence, arguing that it was both procedurally and substantively unreasonable.  In addition Hall argues that the district court erred in finding that his earlier commitment to the Department of Children's Services ("DCS") as a juvenile constituted a period of "confinement" or "imprisonment" that justified adding eight points to his criminal history.  We have considered each of those arguments but find them unpersuasive.  Hence, for the reasons set out below,  we affirm the district court's judgment.

**I.  Factual Background**

**A.  Facts Related to the Offense**

---

[*]  The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

Hall's Presentence Investigation Report ("PSR") narrates the undisputed facts of his offense. On the evening of March 26, 2005, 18-year-old Hall was driving a white 1990 Honda Accord on U.S. Highway 441 between Gatlinburg and Pigeon Forge, Tennessee--a stretch of road commonly referred to as the "Spur" and located within the Great Smoky Mountains National Park. On that same night and on that same stretch of road, Steven Williams ("Williams") was driving a red 1996 Nissan 240 SX. At about 10 p.m. Hall and Williams found themselves stopped side-by-side at a red traffic light in Gatlinburg, near the intersection of U.S. Highways 321 and 441. While waiting for the traffic light to change color, both drivers began to "rev" their engines; a signal that the two men--strangers to one another before that moment--were challenging each other to a race.

As soon as the traffic light turned green, Hall and Williams took off. Although the posted speed limit on the course they traveled ranged from 35 to 45 miles per hour, their cars quickly reached speeds of 85 to 90 miles per hour. In the final moments of their race both Hall and Williams were driving in the right, or outside, lane of the Spur, heading north. At that time Williams moved to pass a third vehicle, a van, that was traveling to his left, on the inside northbound lane. As Williams was maneuvering past that van, however, a fourth vehicle--a 1997 Chrysler LHS four-door sedan--pulled into the Spur from the left side of the road. That vehicle was heading directly east, attempting to cross both northbound lanes of the Spur with Hall and Williams barreling toward it.

Williams slowed down in time so that he narrowly avoided hitting the Chrysler. Hall, unfortunately, was unable to do the same. His Honda T-boned the right side of the Chrysler as it entered the right, or outside, northbound lane of the Spur, knocking it about 82 feet northeast

2

from the point of impact. Killed instantly were Myra Louise Nelson, the driver of the Chrysler, and all four of her passengers (two of them members of her family). Hall later admitted that he had been drinking and smoking marijuana before the collision.

Both Hall and Williams were charged with five counts of second-degree murder. On June 26, 2006, scheduled to be the first day of Hall's and Williams's trial, Williams pleaded guilty and agreed to testify against Hall. Later that same day Hall also pleaded guilty to one count of aiding and abetting second-degree murder.

**B. Facts Related to the Sentencing**

Hall's sentencing took place on December 7, 2006. According to the PSR prepared by the United States Probation Office, Hall's base offense level was 38 (United States Sentencing Guideline § ("Section") 2A1.2(a)). That number was reduced to 35 by a 3-level downward adjustment to reflect Hall's "acceptance of responsibility" (Section 3E1.1).

As is typical, Hall's PSR discussed his criminal history. Hall had earlier amassed 11 criminal history points, 6 of which stemmed from adjudications that occurred while he was a juvenile and in DCS custody (Section 4A1.2(d)(2)(A)). Another 2 points were added because Hall committed the instant offense less than two years after his release from DCS custody (Section 4A1.1(e)). And 3 more points were added for drug- and alcohol-related offenses that Hall had committed in 2001, 2003 and 2005. All in all, those 11 criminal history points placed Hall in Criminal History Category V--a result that, when combined with his offense level of 35, yielded a sentencing range under the advisory Guidelines of 262 to 327 months.

3

In a written presentence memorandum[1] Hall objected to his criminal history calculation because, he maintained, 8 of the 11 points stemmed from juvenile adjudications and thus "overstate[d] his criminal history." Relatedly Hall argued that because those adjudications had caused his commitment to DCS group homes--as opposed to more traditional penal institutions--his stays should not qualify as "confinement" or imprisonment" within the meaning of Sections 4A1.2(d)(2)(A) or 4A1.1(e) respectively.

Hall also urged the district judge to consider other factors set forth in 18 U.S.C. §3553(a) ("Section 3553(a)") before sentencing him within the range calculated under the advisory Guidelines. In particular Hall called the judge's attention to the fact that he was "abandon[ed]" by his mother when he was about 10 and that as a result "suffered from depression and began to 'self-medicate' with alcohol and marijuana" at a young age. Owing to a "lack of guidance . . . from his parents during his formative years," Hall went on, he amassed driving citations that eventually "spread into drug paraphernalia charges and marijuana possession." At the same time Hall's memorandum focused on his more positive attributes, including "his remarkable record of employment in his teen years," the successful completion of his GED and the "extreme remorse" he felt "for the deaths . . . caused by his reckless behavior." Hall ultimately asked for a sentence less than 262 months--the low end of the range as calculated under the advisory Guidelines--

---

[1] On October 25, 2006 Hall filed a one-page "motion for downward departure" where he asked "the Court [to] impose a reasonable sentence . . . one that is less than the range proposed under Federal Sentencing Guidelines as set out in the presentence report." Although Hall stated in that motion that a "Memorandum in Support of the Motion for Departure" would be filed under seal and under separate cover, no such memorandum--at least not one labeled as such--was ever filed. Instead, on that same day, Hall filed a "Memorandum in support of [His] Motion for a Reasonable Sentence." Like the government and the district court, we assume that memorandum was intended to support Hall's "motion for downward departure."

because "a sentence of such extreme length would be more harmful than helpful for a young man."

Hall raised similar arguments during his actual sentencing hearing. In addition, because Williams had been sentenced by that time, Hall urged the court to select a sentence that was more or less commensurate with the 102-month sentence that had been imposed on his co-defendant. Hall conceded, though, that Williams's criminal history had placed him in Category I (rather than V) and that the United States had moved to have Williams's Guidelines-calculated sentence reduced pursuant to Section 5K1.1, which allows a district court to award more lenient sentences to defendants who have "provided substantial assistance" to prosecutors.

Responding to each of those arguments, the district judge first explained that the distinctions between Hall and Williams were too significant to overlook. That led him to reject Hall's arguments that his criminal history score had been incorrectly calculated and that other mitigating factors warranted a sentence of less than 262 months. In reaching the latter decision, the judge addressed factors set forth under Section 3553(a):

> [W]ith respect to the nature and circumstances of the offense . . . the defendant has admitted to driving recklessly and at an excessively high [rate] of speed . . . the defendant has [pleaded] guilty to the crime of second degree murder, a serious offense, and that is the offense on which the court must impose punishment.
>
> As to the history and characteristics of this defendant, Mr. Hall was 18 . . . at the time of this incident. He has, unfortunately, a history of reckless driving and driving under the influence which unfortunately may be viewed as a precursor to what happened in March of 2005.
>
> Particularly troubling in his criminal history are several instances which stand out, including at age 17 being arrested and convicted of driving under the influence while on a weekend pass [from] custody of [DCS], for other reckless driving charges, [and] it was noted here this morning and in the pretrial filings several instances of reckless driving offenses in the months after the incident . . . of

5

March 2005. . . . [I]ncluded within the offense for which Mr. Hall was arrested after March of 2005 was admitted marijuana possession and use while driving.

Against his background I have to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. A sentence in this case also needs to act as a deterrent not only to Mr. Hall individually but also to others who may engage in reckless behavior with perhaps unintended, but as we see here, severe and serious and even foreseeable consequences.

The defendant in this case unfortunately abused the trust that society places in the driver of a motor vehicle and that abuse has resulted in the deaths of five people, people who have left behind family and friends.

The Court finds that given the defendant's criminal history both before and after the incident in question, there is a need to protect the public from further crimes of this defendant as well as to provide the defendant with needed training, education and medical treatment. For that reason, among others, the Court will recommend the defendant undergo an intensive substance abuse treatment program while incarcerated.

At that point in the hearing the judge proceeded to address Hall's "motion for downward departure" and its accompanying memorandum (see n. 1). In rejecting that motion the judge said:

Section 5K2.0 allows the sentencing Court to depart from the applicable guideline range if the court finds there exists a mitigating circumstance of a kind or to a degree not adequately taken into consideration in formulating the guideline. Similarly . . . Section 4A1.3 allows a sentencing court to depart from the guideline range, if the court finds a defendant's criminal history category substantially over represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit another crime.

Based on the evidence presented in the defendant's sentencing memorandum and the factors of [Section] 3553, I do not find that the defendant has presented a mitigating characteristic sufficient to warrant the granting of a motion for downward departure, nor do I find that the defendant's criminal history category overrepresents the seriousness of the defendant's past criminal conduct.

Addressing, as the court is required to do, some of the specific arguments not only here today but in defendant's sentencing memorandum . . . the defendant argues

6

there is no basis for a belief that any sentence fashioned by the Court must use the guidelines as a starting point and depart therefrom.

However, the Sixth Circuit stated that even post [United States v.] Booker[, 543 U.S. 220 (2005)] a District Court must still consider the guidelines when imposing a sentence sufficient, but not greater than necessary, to comply with the purposes of [Section] 3553.

The defendant . . . has argued that the criminal history calculated in the [PSR] overstates the seriousness of his criminal history because most of the points are awarded for juvenile adjudications. The defendant's criminal history score is largely based on his juvenile record, but that is the record he has accumulated and it was correctly calculated according to the guidelines.

The defendant in his sentencing memorandum points to his mother's absence and lack of discipline from his father as a factor to warrant a lesser sentence . . . . Those factors undoubtedly influenced Mr. Hall's development and perhaps shaped his outlook, however, his childhood or that background . . . is not an excuse for his actions sufficient to warrant a departure in this case.

The defendant also points to his work history and particularly his interest and aptitude in working on cars. Those factors suggest that the defendant has the potential to pursue an avocation and be a productive member of society following the period of incarceration.

The defendant has expressed remorse for [his] actions, both through pretrial presentencing filings . . . as well as here today, and the Court certainly appreciates that expression of remorse . . . as well as the acceptance of responsibility.

The defendant has also devoted much of his time during presentencing incarceration to study the Bible and the pursuit of religious correspondence courses. The defendant's course of self-improvement is also commendable, but . . . . the Court does not believe it is intended to be offered as an excuse for his prior actions.

Finally, the defendant points to his youth and his potential vulnerability in prison as factors for considering a lesser sentence. However, while the defendant is a young person, it is unfortunately not uncommon for young persons to appear before this Court for sentencing and the defendant's youth alone is not sufficient to adjust his sentence on the grounds of vulnerability. Therefore, the defendant's motion for downward departure will be denied.

With his departure motion denied, Hall was sentenced to 262 months' imprisonment--the

bottom of the range under the advisory Guidelines--along with three years' supervised release and a $100 special assessment.  Hall timely filed this appeal.

## II. Standard of Review

We "review de novo a district court's legal conclusions concerning the interpretation and application of the Guidelines" (United States v. Burns, 498 F.3d 578, 580 (6th Cir. 2007)). Post-Booker we review sentences for reasonableness (United States v. Webb, 403 F.3d 373, 383 (6th Cir. 2005)), for which purpose we determine whether the district court has successfully "impose[d] a sentence sufficient, but not greater than necessary to comply with the purposes of section 3553(a)(2)" (United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (internal quotation marks omitted)).

Reasonableness review calls on us to conduct "two inquiries"--one into the "procedural reasonableness" of a sentence and one into its "substantive reasonableness" (United States v. Collington, 461 F.3d 805, 808 (6th Cir. 2006)). As we explained in United States v. Jones, 489 F.3d 243, 250-51 (6th Cir. 2007) (emphasis added) (internal citations and quotation marks omitted):

> A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in [Section] 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration. Furthermore, when a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.

Although there is more than a small amount of overlap between "procedural" and "substantive" sentencing errors (see United States v. Ming Liou, 491 F.3d 334, 337 (6th Cir. 2007)), a sentence may be substantively unreasonable "where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent §3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor" (United

9

States v. Ferguson, 456 F.3d 660, 664 (6th Cir. 2006) (alterations in original and internal quotation marks omitted)).  More importantly, in assessing the substantive reasonableness of a sentence we apply a rebuttable presumption of reasonableness to sentences that fall within the applicable Guidelines range (United States v. Vonner, 516 F.3d 382, 389 (6th Cir. 2008) (en banc); Ming Liou, 491 F.3d at 337).  Hall bears the burden of rebutting that presumption of reasonableness (Vonner, 516 F.3d at 390).

### III.  Hall's Sentence Is Procedurally Reasonable

Hall argues that his sentence is procedurally unreasonable because the district judge (1) placed an undue amount of weight on the sentencing range calculated under the advisory Guidelines and (2) failed to explain clearly the reasons for the sentence imposed.[2]  We discuss those contentions in turn.

First Hall argues that the district judge sentenced him while operating from the erroneous "premise that the Guidelines range . . . was . . . presumptively reasonable." **[Blue Br. 26]**  To support his claim Hall points to that part of the sentencing hearing transcript where the district judge addressed Hall's motion for a downward departure as well as Guidelines Sections 5K2.0 and 4A1.3.  Under Section 5K2.0(a)(2) a court may "depart" from the calculated Guideline range based on circumstances that the Sentencing Commission may not have considered adequately when determining that range.  Under Section 4A1.3(b)(1) a "downward departure" may be warranted when "the defendant's criminal history category substantially over-represents the

---

[2]Although  Hall also argues that his sentence is procedurally unreasonable because the judge failed to consider all of the pertinent Section 3553(a) factors, based on the Ming Liou criterion quoted in the proceeding paragraph we address that subject later, in the next section dealing with the substantive reasonableness of Hall's sentence.

seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Hall contends that the district judge approached Hall's sentencing from the perspective that he could not abandon the calculated Guidelines range unless the conditions of either Section 5K2.0 or Section 4A1.3 were met and that this revealed a fundamental misconception of how sentencing should operate post-Booker–that is, that what matters now is not necessarily the "correctness" of a departure under the Guidelines but rather the overall reasonableness of the sentence in Section 3553(a) terms.

Hall's argument fails for two reasons. First, our circuit continues to recognize the vitality of "downward departures," even post-Booker.[3] As we explained in United States v. McBride, 434 F.3d 470, 477 (6th Cir. 2006):

> The assertion that departures are obsolete has an element of truth--for there is now no mandatory guideline range from which to depart--and does properly shift the focus of our review to reasonableness. Nevertheless, the appropriate Guideline range--including Guideline departures--must still be considered. Because Guideline "departures" are a part of the appropriate Guideline range calculation, we believe that Guideline departures are still a relevant consideration for determining the appropriate Guideline sentence. This Guideline sentence is then considered in the context of the section 3553(a) factors.

Under the teaching of McBride, the district judge did not err when he framed part of his decision in the context of whether a "downward departure" from the range calculated under the advisory Guidelines was appropriate.[4]

---

[3] To be sure, we have at the same time recognized "that there is not complete agreement among the courts over whether Guideline-based 'departures' truly even exist at this point" (McBride, 434 F.3d at 477, citing United States v. Johnson, 427 F.3d 423, 426 (7th Cir. 2005) and United States v. Wing, 433 F.3d 622, 633 (8th Cir. 2005) (Loken, C.J., concurring) as examples of differing jurisprudence on the subject).

[4] It should not be forgotten that it was Hall himself who styled his initial motion to the judge as a "motion for downward departure."

Second, any contention that the district judge erred by placing too much weight on the calculated Guidelines range is further negated by the judge's <u>next</u> discussing (just as <u>McBride</u> prescribes) the "Guideline sentence . . . in the context of the section 3553(a) factors" (<u>id.</u>). For purposes of procedural reasonableness we must separately examine whether a district judge, at the least, recognizes that Section 3553(a) calls for the consideration of other factors besides the calculated range. That was plainly done here: At the very outset of the sentencing hearing the district judge stated he "will discuss the advisory guideline calculation and <u>the factors discussed in [Section] 3553 that are relevant to this case</u>" (emphasis added). Then he proceeded to discuss a number of the factors set out in Section 3553(a), including the need to avoid sentencing disparities between similarly situated defendants, the nature of the offense, the personal history of the defendant and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. In sum, the district judge plainly did not place an undue amount of weight on the sentencing range calculated under the advisory Guidelines. Instead, per <u>McBride</u>, he properly considered the merits of Hall's "motion for downward departure" before proceeding to consider the appropriateness of that calculated range in light of the other Section 3553(a) factors.

We next address Hall's argument that his sentence was procedurally unreasonable because the district judge failed to give sufficiently clear reasons for the sentence he imposed. <u>Rita v. United States</u>, 127 S.Ct. 2456, 2468 (2007) described what constitutes a sufficient articulation of the reasons underlying a sentence:

> The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.

12

Just how much reasoning is enough "varies according to context," but " <u>Rita</u> indicates that when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy" (<u>Ming Liou</u>, 491 F.3d at 338).

Here, as in <u>Ming Liou</u>, the district judge adverted to a number of the mitigating circumstances and Section 3553(a)-related factors that Hall presented as reasons for imposing a sentence below the range that had been calculated under the advisory Guidelines. For example, the judge cited Hall's turbulent childhood, his positive work history and ongoing Bible studies, the remorse Hall felt for the crime he committed and his youth and "potential vulnerability in prison." Given that recital, Hall's argument boils down to the contention that "the district court did not specifically explain why it was not more moved" by Hall's personal circumstances "or why they were less of a concern than the need for the sentence to reflect the seriousness of the offense and to promote respect for the law" (<u>Ming Liou</u>, 491 F.3d at 340).

But from the record it is "clear that the sentencing judge listened to each argument" and simply decided that such circumstances did not outweigh other relevant Section 3553(a) factors (<u>Rita</u>, 127 S.Ct. at 2469). At bottom the procedure employed here did not fall short of the expectations articulated in <u>Rita</u>, so it cannot be said that Hall's sentence is procedurally unreasonable.

**IV. Hall's Sentence is Substantively Reasonable**

Hall next argues that his sentence was substantively unreasonable because the district judge failed to address all the relevant factors under Section 3553(a). In particular he says that the district judge failed to pay sufficient attention to Section 3553(a)(1), which requires judges to

13

consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as Section 3553(a)(6), which requires judges to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[5]

Those arguments fail as well. Our careful review of the material presented to the district court as well as the transcript of the sentencing hearing reveals that the district judge did consider each of the relevant factors. Indeed, several pages of the transcript were devoted to explaining why the district judge remained unpersuaded by Hall's argument that he should receive a sentence more akin to that imposed on his co-defendant, concluding with this statement:

> The Court is aware of the difference between . . . the guideline range of defendant Williams and the range that is before the Court today with respect to defendant Hall. However, the Court finds that that disparity arises from the choices and behaviors of each of the defendants both before and after the tragic incident of March 2005, both with respect to criminal history and with respect to substantial assistance which led to the government's [5K1.1] motion under the sentencing scheme with respect to defendant Williams . . . . [T]he Court must consider those choices and the respective behavior in imposing [the] sentence in this case.

Further substantive discussion, included in the earlier-quoted excerpt from the sentencing hearing transcript, dealt with the nature and circumstances surrounding the crime as well as Hall's personal history and characteristics (including his DUI and license convictions for events that occurred after the tragic incident that led to his conviction). In short, it cannot be said that the district judge overlooked either Section 3553(a)(1) or Section 3553(a)(6), as Hall alleges.

---

[5] Hall argues as well that his sentence was substantively unreasonable because the district judge gave the Guidelines range an unreasonable amount of weight and because he failed to explain properly his reasons for the sentence imposed. Those issues have been dealt with in the preceding Section and will not be reexamined here. Although Hall further urges that his sentence was substantively unreasonable because the district judge "based the sentence on impermissible factors," he never identifies any such factor. That argument falls of its own weight.

14

Much like the defendant in <u>Ming Liou</u>, Hall would have us conclude that the district court erred substantively by not imposing a lesser sentence simply because other courts, when faced with arguably similar crimes, chose to impose more lenient sentences that Hall believes were still "adequate to serve the interests of deterrence and 'just punishment'" (491 F.3d at 340). But as <u>Ming Liou</u>, <u>id</u>. explained, that "argument misapprehends the post-<u>Booker</u> role of appellate courts," for "[w]hile in the abstract we might agree that [a lesser sentence] could serve the relevant interests, it is for the district court to determine, in the first instance, what sentence is 'sufficient, but not greater than necessary' to meet these interests." Put simply, the district judge adequately considered the relevant factors under Section 3553(a), and so Hall has not successfully rebutted the presumption that his within-Guidelines sentence is substantively reasonable.

## V. Hall's Criminal History Score Was Correctly Calculated

Finally, Hall urges that the district judge calculated his criminal history score incorrectly because the time Hall spent in DCS custody following his three juvenile adjudications did not qualify as periods of "confinement" for purposes of Section 4A1.2(d)(2)(A) or as periods of "imprisonment" for purposes of Section 4A1.1(e). But Hall's argument--as he himself concedes--is foreclosed by a steady stream of our caselaw that began with the per curiam opinion in <u>United States v. Kirby</u>, 893 F.2d 867, 868 (6th Cir. 1990).

Under Section 4A1.2(d)(2)(A) two points are added to a defendant's criminal history score "for each . . . juvenile sentence to <u>confinement</u> of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense" (emphasis added). Under Section 4A1.1.(e), two points are added "if the defendant committed

15

the instant offense less than two years after release from <u>imprisonment</u>" (emphasis added). <u>Kirby</u>, 893 F.2d at 868 held that the district judge did not err when, in calculating a defendant's criminal history score, he accounted for the defendant's prior juvenile adjudication and concomitant seven-month commitment to the custody of the Kentucky Cabinet for Human Resources and thus added four points under the two quoted Guideline sections. In so concluding, <u>Kirby</u> specifically rejected the defendant's argument that "an adjudication of delinquency by a juvenile court cannot be deemed a conviction" and thus cannot trigger the application of either Sections 4A1.2(d)(2)(A) or 4A1.1.(e) (<u>id.</u>).

We have never wavered from <u>Kirby</u> (see, e.g., <u>United States v. Hanley</u>, 906 F.2d 1116, 1120 (6th Cir. 1990); <u>United States v. Williams</u>, 176 F.3d 301, 311-12 (6th Cir. 1999); <u>Phillips v. United States</u>, 238 Fed. Appx. 89, 94 (6th Cir. 2007), and our panel is in no position to do so today. Hall urges us to use the approach employed in <u>United States v. Gener</u>, No. 04 CR 423-17(RWS), 2005 WL 2838984, at *5 (S.D. N.Y. Oct. 26, 2005), where the sentencing judge did not give the defendant two criminal history points under Section 4A1.2(d)(2)(A) for his prior juvenile adjudication because, the judge concluded, the defendant was sentenced to a "limited secure facility," not a "prison-like facility," and because "the length of confinement was not directly related to the gravity of the offense but rather was governed by his family circumstances and his special personal needs." We cannot of course follow an unpublished district court decision--and one from another circuit at that--in preference to our own longstanding circuit caselaw. We hold that the sentencing judge correctly accounted for Hall's prior juvenile adjudications and periods of confinement with DCS when calculating his criminal history score as a necessary predicate to determining his final sentence.

16

## VI. Conclusion

Hall's sentence was neither procedurally nor substantively unreasonable. In addition, the district court did not err when calculating Hall's criminal history score, correctly accounting for his prior juvenile adjudications and time spent in DCS custody. Hall's sentence is therefore **AFFIRMED.**